IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| FRANCISCO URTEAGA-SAENZ,      Petitioner, | )<br>)<br>) |
| v. | )   CIVIL ACTION NO. 10-22885-KKD |
| UNITED STATES OF AMERICA,      Respondent. | )<br>)<br>) |

**ORDER**

This matter is before the Court on Petitioner Francisco Urteaga-Saenz ("Urteaga")'s "Petition for Writ of Error Coram Nobis, or Alternative Motion to Vacate Conviction" (Doc. 1), the Government's Answer in Opposition (Doc. 8), and the evidentiary support attached thereto (Docs. 8-1 through 8-5).[1]  Upon consideration, and for the reasons set forth herein, the Petition is due to be **DENIED**.

**I.     Background**

Urteaga is a Peruvian citizen who, in 1978 at the age of 17, entered the United States on a tourist visa. (Doc. 8-5 at 4). Urteaga remained in the United States after his visa expired, and, approximately four years later, was charged in the United States District Court for the Southern District of Florida with conspiring to possess cocaine with intent to distribute, possessing cocaine with intent to distribute, and distributing cocaine.  (Id.; Doc. 8-1 at 6).  On October 18, 1982, Urteaga pled guilty to the drug conspiracy charge. (Doc. 8-2 at 2). As set forth in a written plea

---

[1]     In his brief, Petitioner clarifies that he seeks alternative relief in the form of a writ of habeas corpus pursuant to 18 U.S.C. § 2255. Whereas Petitioner was not in the custody of the United States at the time his petition was filed, habeas relief is unavailable. See Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Thomas v. United States, 572 F.3d 1300, 1303 (11th Cir. 2009). However, coram nobis relief remains available.  See United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002) ("A writ of error coram nobis is a remedy available to vacate a conviction when the petitioner has served his sentence and is no longer in custody . . . .").

agreement, the Government agreed to dismiss the remaining counts of the Indictment as they pertained to Urteaga and to recommend that Urteaga, who was 22 years old at the time of his plea, be sentenced as a "young adult offender." (Doc. 8-3 at 2, ¶¶ 2 & 3).[2] Urteaga was sentenced to five years probation, and, pursuant to the FYCA, his conviction was later set aside by order dated August 29, 1988. (Doc. 8-1 at 7; Doc. 8-5 at 4).

On December 20, 1996, Urteaga filed an application with the former Immigration and Naturalization Service ("INS") to register as a permanent resident. (Doc. 1 at 7). A dozen years later, on January 30, 2009, Urteaga was served a Notice to Appear charging that he is subject to removal as an alien who remained in the United States longer than permitted. (Doc. 8-5 at 5). On July 2, 2009, the Department of Homeland Security ("DHS") further charged Urteaga with being removable as an alien convicted of a violation relating to a controlled substance. (Id.). In the immigration proceedings that followed, Urteaga and DHS briefed the issue of whether Urteaga's 1982 conviction remained a conviction for removal purposes notwithstanding the aforementioned 1988 order that set the conviction aside. (Id.). On March 24, 2009, Immigration Judge Pedro A. Miranda rejected Urteaga's arguments and sustained all charges of removability. (Id.).

On August 9, 2010, Urteaga filed the instant coram nobis petition by which he seeks to vacate his 1982 conviction. After the Government submitted its response, the Honorable Marcia G. Cooke, United States District Judge for the Southern District of Florida, set a status

---

[2] In 1982, the Parole Commission and Reorganization Act provided that a "young adult offender" (*i.e.*, a defendant who, at the time of his conviction, had attained his twenty-second birthday but not his twenty-sixth birthday) could, in certain circumstances, be sentenced pursuant to the Federal Youth Corrections Act ("FYCA"). See 18 U.S.C. § 4216 (1982) (repealed 1984). The FYCA provided, *inter alia*, that "youth offenders" under the age of 22 could be placed on probation "[i]f the court is of the opinion that the youth offender does not need commitment" and that the court may set aside the offender's conviction thereafter. See 18 U.S.C. §§ 5010(a), 5021(b) (1982) (repealed 1984).

conference and evidentiary hearing. (Doc. 9). Two days before that hearing was to be held, Judge Cooke recused herself. (Doc. 12). On July 19, 2011, Chief Judge Joel F. Dubina of the Court of Appeals for the Eleventh Circuit reassigned the case to the undersigned. (Doc. 13). An order to that effect was entered on August 17, 2011. (Id.).

**II.     Standard of Review**

A federal court may issue a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a). United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000). "The bar for coram nobis relief is high." Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000). Coram nobis is "an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." Mills, 221 F.3d at 1203. As a writ of last resort, coram nobis is available only when other post-conviction statutory remedies are not. United States v. Brown, 117 F.3d 471, 474–75 (11th Cir. 1997). The writ may issue only to correct an error "involv[ing] a matter of fact of the most fundamental character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." Moody v. United States, 874 F.2d 1575, 1576-77 (11th Cir. 1989).

**III.    Analysis**

Urteaga attacks his conviction on two fronts. First, he contends that his conviction should be vacated because his guilty plea was induced by the "unfulfilled" "assurances of his defense lawyer, joined in by the government, that he would not be subject to immigration proceedings." (Doc. 1 at 6 & 9). Second, Urteaga asserts that vacatur is warranted because he was deprived of his Sixth Amendment right to the effective assistance of counsel. (Id. at 10-12). Both arguments fail.

### A. Specific Performance

Urteaga alleges that, in 1982, he pled guilty to a drug conspiracy charge in exchange for the assurance that the resultant conviction, once set aside, would not carry any immigration consequences. (Id. at 6). Now that DHS seeks to remove him from the United States on the basis of his 1982 conviction, Urteaga claims that he has been denied the benefit of his bargain with the Government. (Id. at 9). Relying on Santobello v. New York, 404 U.S. 257 (1971) and United States v. Al-Arian, 514 F.3d 1184 (11th Cir. 2008),[3] Urteaga asks this Court to vacate his plea and conviction or to enjoin the removal proceedings underway. (Id.).[4]

Ultimately, Urteaga's specific performance claim fails for two reasons. First, Urteaga fails to allege any promise made by counsel for the United States. Urteaga claims that <u>his own attorney</u>, not the prosecutor, assured him that he would be immunized from any adverse immigration consequences of his conviction. See id. at 6 ("Mr. Urteaga agreed to the case disposition <u>based on the assurances of his defense lawyer</u>, joined in by the government, that he would not be subject to immigration proceedings as a result of the case resolution . . . ." (emphasis added)). Second, even if the prosecutor had made such a promise, it could not have

---

[3] In Santobello, the Supreme Court held "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262. In Al-Arian, the Eleventh Circuit held that a claim that the Government breached the plea agreement is properly raised in a motion for habeas relief. 514 F.3d at 1191.

[4] Urteaga has not cited any authority to suggest that this Court is empowered to halt the removal proceedings against him, and it appears that the Court is without jurisdiction to do so. See 8 U.S.C. § 1252(g) (2006) ("Except as provided in this section and notwithstanding any other provision of law . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."); Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999) (section 1252(g)'s jurisdictional bar is applied "without limitation" to "claims arising from all past, pending, or future exclusion, deportation, or removal proceedings").

4

bound INS or DHS.  See San Pedro v. United States, 79 F.3d 1065, 1068-69 (11th Cir. 1996) ("To enforce a promise made during plea negotiations, there must have been a valid, binding agreement in the first instance upon which the defendant relied in deciding to forego his constitutional rights and plead guilty. . . . [A]ssuming [a defendant] was promised non-deportation, INS is not bound unless the United States Attorney and the AUSAs had either express or implied actual authority to make that representation.").  In the absence of a binding agreement and a breach thereof, neither specific performance nor vacatur is warranted.

### B. Ineffective Assistance of Counsel

Claiming that he was deprived of the effective assistance of counsel by virtue of his trial attorney's assurance that he would not be deported on account of his young adult offender conviction (Doc. 8 at 11), Urteaga relies on the Supreme Court's recent pronouncement that criminal defense attorneys must advise their non-citizen clients of both the certain and possible immigration consequences of conviction.  See Padilla v. Kentucky, 130 S. Ct. 1473, 1483 (2010).  In its next term, the Supreme Court will settle a split among the circuits as to whether Padilla's holding applies retroactively to convictions like Urteaga's that became final before March 31, 2010.[5]  However, Urteaga's entitlement to relief does not rise or fall on the

---

[5] See Chaidez v. United States, 80 U.S.L.W. 3612 (U.S. Apr. 30, 2012) (No. 11-820), granting cert. to 655 F.3d 684 (7th Cir. 2011).  Three circuits have held that Padilla announced a "new rule," which, according to the doctrine set forth in Teague v. Lane, 489 U.S. 288, 307-10 (1989), cannot have retroactive effect unless it falls within an exception for either a) substantive rules that place certain conduct beyond the reach the law-making authority or b) "watershed" procedural rules.  See United States v. Amer, 681 F.3d 211 (5th Cir. 2012); United States v. Chang Hong, 671 F.3d 1147 (10th Cir. 2011); Chaidez, 655 F.3d 684.  One circuit has held that Padilla does not state a new rule and therefore applies retroactively.  See United States v. Orocio, 645 F.3d 630 (3d Cir. 2011).

Though the Eleventh Circuit has expressly declined to address the first part of the Teague analysis, namely whether the Supreme Court's decision announced a new rule of law, it has held that Padilla did not announce a watershed rule of criminal procedure.  See Figuereo-Sanchez v. United States, 678 F.3d 1203 (11th Cir. 2012).

retroactivity of Padilla.

Even if Padilla applied to his conviction, Urteaga could not prevail on his ineffective assistance claim unless he could establish two things: "(1) 'counsel's performance was deficient,' meaning it 'fell below an objective standard of reasonableness'; and (2) 'the deficient performance prejudiced the defendant.'" Gordon v. United States, 518 F.3d 1291, 1297 (11th Cir. 2008) (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).  Deficient performance requires a showing that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990).  With respect to the prejudice prong, "a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance." Von Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1323 (11th Cir. 2002).  Though the Court is free to dispose of an ineffectiveness claim on either of Strickland's two grounds, see Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998), it is clear that Urteaga cannot carry his burden as to either prong.

Accepting as true Urteaga's allegation that his attorney advised him that no adverse immigration consequences would result from his set aside conviction, such advice cannot constitute deficient performance in as much as it was wholly correct at the time it was offered. Ten years prior to Urteaga's plea and conviction, the First Circuit set aside a deportation order directed at an alien who, at the age of 19, had been sentenced as a youthful offender and whose federal conviction had been expunged pursuant to FYCA. Mestre Morera v. U.S. Immigration & Naturalization Serv., 462 F.2d 1030, 1031-32 (1st Cir. 1972).  Observing that FYCA "expresse[d] a Congressional concern . . . that juvenile offenders be afforded an opportunity to atone for their youthful indiscretions" and be provided with "a second chance free of a record

6

tainted by such a conviction," the court of appeals declared that it could not "imagine a more complete deprivation of a second chance than deportation." Id. at 1032. Two years later, the Board of Immigration Appeals agreed and expressly held that convictions set aside by FYCA carry no immigration consequences. See Matter of Zingis, 14 I. & N. Dec. 621, 624 (BIA 1974). ("Under the provisions of the Federal Youth Corrections Act, the conviction, when it is set aside, is totally set aside. It may not be used in any way.").[6] Zingis remained good law until 1996 when Congress statutorily defined "conviction" for immigration purposes.[7] Urteaga's counsel cannot be faulted for failing to divine in 1982 how the law might change 14 years later and for not advising Urteaga as to the potential effects of such a change. See Cooks v. United States, 461 F.2d 530, 532 (5th Cir. 1972) ("[A] plea [does not] later become invalid because it is predicated upon advice correct at the time, but later proved to have been erroneous by reason of subsequent decisions. Clairvoyance is not a required attribute of effective representation." (emphasis in original) (internal citations omitted)).

Additionally, Urteaga has not adequately alleged that he was prejudiced by his attorney's conduct. In his Petition, Urteaga merely states that he would have rejected any plea bargain that did not include an opportunity to avoid immigration consequences. A panoply of precedent reveals that such a conclusory, self-serving assertion is not enough to compel constitutional relief. See, e.g, Roach v. Roberts, 373 F. App'x 983, 985 (11th Cir. 2010) ("[A] petitioner's bare

---

[6] In Castano v. INS, 956 F.2d 236, 238 (11th Cir. 1992), the Eleventh Circuit acknowledged Zingis' holding.

[7] See 8 U.S.C. § 1101(a)(48)(A)(i)-(ii) (2006) ("The term 'conviction' means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.").

allegation that he would not have pleaded guilty is insufficient to establish prejudice under Strickland."); United States v. Campbell, 778 F.2d 764, 768 (11th Cir. 1985) ("Campbell alleges that she would not have pleaded guilty if her trial counsel had advised her of the deportation consequences of the plea. This bare allegation is not sufficient, however, to establish prejudice under Strickland."), abrogated on other grounds by Padilla, 130 S. Ct. 1473; Banos v. United States, No. 10-23314-CIV, 2011 WL 835789, at *3 (S.D. Fla. Mar. 4, 2011) ("[T]here is no evidence in the record, other than Mr. Banos' own assertion, that supports Mr. Banos' contention that he would have insisted on going to trial if he had been adequately informed of the potential immigration consequences. Therefore, Mr. Banos fails to make the requisite showing that, but for counsel's advice, there is a reasonable probability he would not have pleaded guilty.").

**IV.    Conclusion**

Based on the foregoing, it is **ORDERED** that Urteaga's Petition for Writ of Error Coram Nobis (Doc. 1) is **DENIED**. The writ shall not issue.[8]

**DONE** and **ORDERED** this the **13th** day of **July 2012**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[8] This Order should not be read as endorsing the Immigration Judge's finding that Urteaga is removable as an alien convicted of a controlled substance offense. The only question presented by Urteaga's Petition — and therefore the only question properly before this Court — is whether Urteaga's 1982 conviction should be vacated. This Court has no jurisdiction to determine whether, by defining the term "conviction" in § 1101(a)(48)(A), Congress intended to, did, or even could cause previously set aside youthful offender convictions to have immigration consequences when, otherwise, they would carry none. Urteaga remains free to contest the immigration court's order by way of an appeal to the Board of Immigration Appeals and, if necessary, to the Eleventh Circuit.